UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA M. RODRIGUEZ,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | No. 2:14-cv-2594-KJN<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").[1]  In her motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from November 24, 2010, plaintiff's alleged disability onset date, through March 28, 2013, the date of the final administrative decision.  (ECF No. 17.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment.  (ECF No. 19.)

---

[1] This action was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 7, 9.)

1

Having carefully considered the parties' briefing, the court's record, and the applicable law, the court GRANTS IN PART plaintiff's motion for summary judgment, DENIES the Commissioner's cross-motion for summary judgment, and REMANDS the action for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

I.   BACKGROUND

Plaintiff was born in September 1984, has a high school education with some junior college classes, is able to communicate in English, and previously worked as a receptionist.[2] (Administrative Transcript ("AT") 30, 46, 48, 72.) Plaintiff applied for DIB and SSI in January 2012 and May 2012, respectively, alleging that her disability began on November 24, 2010, and that she was disabled primarily due to lumbar degenerative disc disease and lumbar disc herniation. (AT 21, 257-60, 261-70, 297.) After plaintiff's applications were denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on March 18, 2013, and at which plaintiff, represented by an attorney, and a vocational expert ("VE") testified. (AT 37-77.) In a decision dated March 28, 2013, the ALJ determined that plaintiff had not been under a disability, as defined in the Act, from November 24, 2010, plaintiff's alleged disability onset date, through the date of the ALJ's decision. (AT 21-31.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on September 3, 2014. (AT 1-3.) Plaintiff then filed this action in federal district court on November 5, 2014, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II.   ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ improperly rejected the opinion of plaintiff's treating physician; and (2) whether the ALJ erroneously discounted the statements of plaintiff and her mother regarding plaintiff's symptoms and functional limitations.

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

III.  LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.  DISCUSSION

    A.  Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[3] As an initial matter, the ALJ determined that plaintiff

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past relevant work? If so, the

3

met the insured status requirements of the Act for purposes of DIB through December 31, 2013. (AT 23.) At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since November 24, 2010, plaintiff's alleged disability onset date. (Id.) At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease with radiculopathy and obesity. (Id.) However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 24.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the Residual Functional Capacity (RFC) to perform less than the full range of Sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). She must have a sit/stand at will option provided she is not off task more than 10% of the work period. She can occasionally bilaterally push-pull and occasionally bilaterally operate foot controls. She can occasionally climb ramps and stairs, but never ladders, ropes or scaffolds. She can occasionally balance, stoop, crouch, kneel and crawl. She must avoid all exposure to use of hazardous machinery and unprotected heights.

(AT 25-26.)

At step four, the ALJ found, based on the VE's testimony, that plaintiff was capable of performing past relevant work as a receptionist, because such work did not require the performance of work-related activities precluded by plaintiff's RFC. (AT 30.)[4] Thus, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from November 24,

---

claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

[4] In light of the ALJ's finding at step four, the ALJ did not proceed to step five of the sequential disability evaluation process.

2010, plaintiff's alleged disability onset date, through March 28, 2013, the date of the ALJ's decision.  (AT 30-31.)

   B.  Plaintiff's Substantive Challenges to the Commissioner's Determinations

   (1) Whether the ALJ improperly rejected the opinion of plaintiff's treating physician

In this case, all parties agree that plaintiff suffers from serious spinal impairments, accompanied by symptoms of radiculopathy.  The question is whether plaintiff's symptoms during the relevant period were so severe as to render her disabled for purposes of the Act.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 830-31.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons.  Id. at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings.

---

[5] The factors include:  (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization.  20 C.F.R. § 404.1527.

1  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally
2  supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-
3  examining professional, by itself, is insufficient to reject the opinion of a treating or examining
4  professional.  Lester, 81 F.3d at 831.

   In this case, plaintiff's treating physician, Dr. Moris Senegor, completed a physical functional capacity assessment on August 16, 2012, which stated, *inter alia*, that plaintiff could only occasionally lift and carry up to 10 pounds, and could only sit, stand, and walk for a total of one hour each in an 8-hour workday. (AT 518-22.) The only supporting medical findings listed were "Lumbar Spine Surgery. Limited range of motion. Chronic spine pain." (AT 522.) The ALJ properly discounted Dr. Senegor's conclusory opinion, because it contained minimal clinical findings or rationale in support of the extremely severe limitations assessed. See Meanel, 172 F.3d at 1114 (treating physician's conclusory, minimally supported opinion rejected).

   That said, the medical evidence in the record indicates that plaintiff suffers from serious spinal impairments. Despite the fact that plaintiff was only 28 at the time of the March 18, 2013 hearing, she had already undergone physical therapy, chiropractic treatment, epidural steroid injections, two lumbar surgeries in 2004 and 2010, and a breast reduction surgery in 2005, in addition to taking oral pain medications, to address her symptoms of back and neck pain. A post-operative March 1, 2011 MRI of the lumbar spine showed multilevel disk dessication indicating intervertebral disk degeneration with some disk displacements. (AT 453.) A June 13, 2012 nerve conduction and needle EMG study revealed evidence of right L5/S1 chronic radiculopathy and left L4/5 chronic radiculopathy. (AT 514-15.)

   Although the treatment notes also plausibly suggest that plaintiff, at least for periods of time, had substantial pain relief as a result of the epidural steroid injections, it is unclear from the record what level of symptoms and limitations plaintiff reasonably experienced after such interventions and how long the relief lasted. These are precisely the types of issues that should be evaluated by an appropriate medical expert. For example, a medical expert who personally examines plaintiff and reviews her records may opine, in his or her best clinical judgment, that, with regular periodic injections and other appropriate treatment, plaintiff could function at a

certain level with restrictions that are not incompatible with plaintiff's past work or other work in the national economy.  Alternatively, an expert may conclude that plaintiff has restrictions that, despite interventions and treatment, would render her unable to work.

In formulating plaintiff's RFC, the ALJ relied, at least in part, on the opinion of a consultative examiner, Dr. Satish Sharma, who examined plaintiff on April 9, 2011, and opined that plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand and walk for 4 hours with normal breaks in an 8-hour workday; sit for 6 hours in an 8-hour workday; and bend and stoop occasionally.  (AT 464-68.)  However, under the circumstances of this case, Dr. Sharma's opinion does not constitute substantial evidence on which the ALJ could reasonably rely, because it appears that Dr. Sharma was not provided with access to plaintiff's prior medical records.  The Commissioner's own regulations require that a consultative examiner be given any necessary background information about the plaintiff's condition.  20 C.F.R. § 404.1517.  To be sure, in some cases, the failure to provide prior records to a consultative examiner may be harmless when the record as a whole is considered.  Nevertheless, in this case, given plaintiff's extensive medical history, it was imperative for Dr. Sharma to review plaintiff's prior records in order to render a meaningful opinion concerning plaintiff's functional capacity.

Consequently, the court finds it appropriate to remand the action for further administrative proceedings—more specifically, for a supplemental consultative evaluation by an appropriate specialist, such as a neurosurgeon or orthopedic surgeon, who is provided full access to plaintiff's prior medical records.  The ALJ may also further develop the record evidence, as deemed appropriate.  Importantly, the court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand within the confines of the applicable law.

(2) Whether the ALJ erroneously discounted the statements of plaintiff and her mother regarding plaintiff's symptoms and functional limitations.

In light of the court's conclusion that the case should be remanded for further development of the medical opinion evidence, the court declines to reach the credibility issues raised by plaintiff at this juncture.  On remand, the ALJ will have an opportunity to reconsider

any credibility determinations, if appropriate.  The court expresses no opinion regarding those matters here.

V.      CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17) is GRANTED IN PART.

2. The Commissioner's cross-motion for summary judgment (ECF No. 19) is DENIED.

3. The final decision of the Commissioner is REVERSED and the action is REMANDED for further administrative proceedings consistent with this order pursuant to sentence four of 42 U.S.C. § 405(g).

4. Judgment is entered for plaintiff.

5. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated:  January 13, 2016

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE